540 P.2d 1321

**MUSIC SERVICE COMPANY, a New Mexico Corporation, Appellant,**

v.

**BUREAU OF REVENUE of the State of New Mexico, Appellee.**

**No. 1803.**

Court of Appeals of New Mexico.
Sept. 10, 1975.

Jay R. Payne, Schlenker, Parker, Payne & Wellbourn, Albuquerque, for appellant.

Toney Anaya, Atty. Gen., Vernon O. Henning, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

█ Music Service Company, taxpayer, appeals from a Decision and Order of the Commissioner of Revenue which did not allow taxpayer a deduction from the compensating tax as provided in § 72–16A–15.1, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, 1973 Supp.). We affirm.

Taxpayer was in the business of providing coin operated, amusement and vending equipment for use by business establishments.

Establishments had use of the machines primarily for the pleasure or amusement of their patrons. Patrons played the pinball machines and juke boxes, and played pool on the coin operated tables.

An establishment had the right to move the machines from one location to another with little or no control over the machine by taxpayer. It could put the machine into and take it out of operation and even put it in storage. It controlled the hours of operation. Taxpayer had no key to the locations involved.

Taxpayer was present when the coin boxes in the equipment were opened and the money counted.

Taxpayer had the right to terminate the arrangement and retake possession of the machine or machines whenever the income fell below a certain amount per month.

The gross receipts tax is not an issue on this appeal. The only contested liability is the deduction allowed from the compensating tax provided in § 72–16A–15.1, supra, In pertinent part it reads:

> The value of tangible personal property, . . . may be deducted in computing the conpensating tax due if the person using the tangible personal property:
>
> A. is engaged in a business which derives a substantial portion of its receipts from leasing . . . tangible personal property of the type leased; and
>
> B. does not use the tangible personal property in any manner other than holding it for lease . . . or leasing . . . it either by itself or in combination with other tangible personal property in the ordinary course of business.

"Leasing is defined in § 72–16A–3(J), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, 1973 Supp.):

> J. "leasing" means any arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property;

The Commissioner determined that the relationship between taxpayer and the owners of the establishments was not one of lessor-lessee. He characterized the relationship as one or more of the following:

> a) the taxpayer granted a license to use the devices and pool tables to the establishment owner;
>
> b) the establishment owner granted a license to use real property to the tax-

payer of the space occupied by the machines to enable the taxpayer to engage in business on the premises of the establishment owner;

c) both the parties engaged in the joint operation of the devices and pool tables.

Taxpayer contends that the agreements for joint operation of these vending machines were leases and the income therefrom was not subject to the compensating tax. We disagree.

What the Commissioner called "joint operation", we deem it to mean, under the facts in this case, a "bailment for mutual benefit of the parties".

The record shows that taxpayer has another type of vending machine agreement with business establishments. It is a lease agreement. The tax on this type of agreement is not at issue. With a lease, payment is made to taxpayer by a flat fee. In the type of agreement here at issue, payment is made by a division of the proceeds from the machines.

The basis of the agreements here in question is, (a) an oral agreement between taxpayer and a business establishment, and (b) receipts. These, in turn, were based on a document called, "Agreement for Joint Operation of Amusement Devices". This document gave no indication of any intent to enter into a lease. The words, "lease", "lessor", or "lessee" are not mentioned. The taxpayer knew the difference between a lease agreement and a bailment for their mutual benefit.

We believe that the type of oral agreement relied on by taxpayer does not meet the definition of the term "leasing". The location of the machines, the hours of operation, the income and method of payment show that the devices and pool tables were not property "employed for or by" the establishment alone. The contract between the taxpayer and the establishment was to facilitate the use of the machines by the patrons of the establishment for the benefit of both the taxpayer and the establishment.

Taxpayer testified that the portion of the proceeds from the devices that went to the establishment was payment by the taxpayer for rental of space in the business establishment. This is inconsistent with a characterization of the agreement as a leasing of the machine to the establishment. A lease would imply that the establishment's proceeds from the machine were its own profits by virtue of the lease *from* the taxpayer.

█ Even if we conceded that a conflict in the evidence exists, the Commissioner may weigh the testimony of taxpayer, determine his credibility and say where the truth lies. His finding is conclusive. *Mears v. Bureau of Revenue*, 87 N.M. 240, 531 P.2d 1213 (Ct.App.1975).

Taxpayer relies on *Co-Con, Inc. v. Bureau of Revenue*, 87 N.M. 118, 529 P.2d 1239 (Ct.App.1974). This case does not assist the taxpayer. The Court said:

The characterization of a transaction as a lease may also be determined by looking to the intentions of the parties as evidenced by their actions with respect to the leased property. [Citation omitted.]

. . . [T]he accompanying treatment by both companies of the transactions *as gross rentals for federal corporate income tax purposes* in the same tax year indicates that the intent of the taxpayer was to treat the arrangements as rentals or leases. . . . [Emphasis added.]; [529 P.2d at 1242.]

█ In the instant case, the intent of the taxpayer is evidenced by his knowledge of the difference between a lease and a bailment for mutual benefit. He chose the latter road to travel. This supports the inference that the relationship between taxpayer and establishment was not a lease and where substantial evidence supports the Commissioner's decision and order, it is affirmed. *Runco Acidizing & Frac. Co., Inc. v. Bureau of Revenue*, 87 N.M. 146, 530 P.2d 410 (Ct.App.1974); *Duke v. Bu-*

*reau of Revenue,* 87 N.M. 360, 533 P.2d 593 (Ct.App.1975).

Affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

WOOD, C. J., specially concurs.

WOOD, Chief Judge (specially concurring).

I join in the result on the basis that there are conflicting inferences as to whether taxpayer's oral agreements amounted to leases. With such conflicts, the Commissioner's decision is conclusive. See *Mears v. Bureau of Revenue,* 87 N.M. 240 , 531 P.2d 1213 (Ct.App.1975).

An issue arising in the briefs and at oral argument concerns the propriety of the Bureau pursuing the taxes in this case. At oral argument we invited affidavits and supporting documentation from the attorneys and such have been filed.

The propriety claim arises because of an alleged concession made by the Bureau's attorney during an informal conference. The material before us supports the view that a concession was in fact made.

But what was the concession? Here the material submitted is in conflict. The taxpayer asserts that the concession was tape recorded. The tape submitted, while supporting that a concession of some sort occurred, does not show the details of the concession. The taxpayer intimates that the tape submitted is incomplete. As to the completeness of the tape, the material submitted is in conflict.

In addition to the conflict in the material submitted, the taxpayer, at the inception of the formal hearing, agreed "to treat the hearing today as the first and only hearing in this matter."

In the light of the foregoing, the case is not an appropriate one to consider whether the concepts of fairness and estoppel may operate independently of the provisions of §§ 72–13–34 and 72–13–73. N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973).